**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.:**

XYZ CORPORATION,

               Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

               Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, XYZ CORPORATION, ("PLAINTIFF"), by and through its undersigned counsel, brings this complaint against defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto (collectively "Defendants" – which schedule will be filed as an exhibit under seal)[1], who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of PLAINTIFF's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set in the seller IDs ("Seller IDs"), and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1.      PLAINTIFF brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark

---

[1] Since it is unknown when Plaintiff's forthcoming *Ex-Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets will be ruled on, Plaintiff's name has been removed to prevent Defendants from getting advanced notice. Plaintiff will file an Amended Complaint under seal that identifies Plaintiff and provides additional information and allegations, including Schedule A.

infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.

## SUBJECT MATTER JURISDICTION

2.     This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

3.     This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

4.     This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

5.     Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through online stores such as amazon.com and walmart.com ("E-Commerce") that are accessible in Florida and operating under their Seller IDs.

6.     Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause PLAINTIFF injury in Florida, and PLAINTIFF's claims arise out of those activities.

7.     Alternatively, defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

2

## VENUE

8.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 since defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

## JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER

10.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A".

11.     Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of PLAINTIFF's intellectual property within this district.

12.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

13.     Joinder of the multiple defendants listed in Schedule "A" is permitted because PLAINTIFF asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

14.     Joinder of the multiple defendants listed in Schedule "A" serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for PLAINTIFFs, Defendants, and this Court.

15.     PLAINTIFF's claims against the multiple defendants listed in Schedule "A" are all transactionally related, Defendants are foreigners (mostly from China), who undertake similar efforts to conceal true identity and similar infringing patterns, arising out of same or similar transactions/occurrences and with facts common to all Defendants.

## THE PLAINTIFF

16.     PLAINTIFF is a company created under the laws of the United States of America.

17.     PLAINTIFF is a company in the business of promoting and selling clothes under its registered trademark.

18.     PLAINTIFF's products are sold through e-commerce and other authorized retailers.

19.     PLAINTIFF offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

20.     Like many other intellectual property rights owners, PLAINTIFF suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as defendants herein.

21.     PLAINTIFF is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

22.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, PLAINTIFF spends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

23.     The recent explosion of infringement over the Internet has created an environment

that requires companies like PLAINTIFF to spend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of PLAINTIFF's intellectual property rights, including consumer confusion and the erosion of PLAINTIFF's brand.

## PLAINTIFF'S TRADEMARK RIGHTS

### PLAINTIFF's Trademark Rights

24.     PLAINTIFF is the owner of all rights in and to the trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (hereinafter, the "PLAINTIFF Mark").

25.     The Mark is used in connection with the manufacture and distribution of high-quality clothing in the categories also identified above.

26.     The PLAINTIFF Mark has been used in interstate commerce to identify and distinguish PLAINTIFF' s high-quality clothing for an extended period of time.

27.     The PLAINTIFF Mark is a symbol of PLAINTIFF's quality, reputation and goodwill and have never been abandoned.

28.     The PLAINTIFF Mark has been registered for several years years. PLAINTIFF has expended substantial time, money and other resources developing, advertising or otherwise promoting the PLAINTIFF Mark.

29.     Further, PLAINTIFF's Mark has extensively used, advertised, and promoted the PLAINTIFF Mark in the United States in association with the sale of high-quality clothing. PLAINTIFF has spent tens of thousands of dollars promoting the PLAINTIFF Mark and products bearing the PLAINTIFF Marks.

30.     As a result of PLAINTIFF' s efforts, members of the consuming public readily identify merchandise bearing or sold under the PLAINTIFF Mark, as being high-quality clothing

associated with PLAINTIFF.

31.     Accordingly, the PLAINTIFF Mark has achieved secondary meaning as identifiers of high-quality clothing.

32.     PLAINTIFF has carefully monitored and policed the use of the PLAINTIFF Mark and has never assigned or licensed the PLAINTIFF Mark to any of the Defendants in this matter.

33.     Genuine clothing bearing and sold under the PLAINTIFF Mark are widely legitimately advertised and promoted by PLAINTIFF via Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Amazon.com, Walmart.com, has become increasingly important to PLAINTIFF' s overall marketing. Thus, PLAINTIFF spends significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow PLAINTIFF to fairly and legitimately educate consumers about the value associated with the PLAINTIFF' s brand and the goods sold thereunder.

## **DEFENDANTS**

34.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

35.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

36.     Defendants are engaged in business in Florida but have not appointed an agent for service of process.

37.     Upon information and belief, defendants have registered, established or purchased,

and maintained their Seller IDs.

38.     Defendants target their business activities toward consumers throughout the United States, including within this district, through their simultaneous operations at Amazon.com, and Walamart.com under the Seller IDs.

39.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of PLAINTIFF's intellectual property rights as described herein operating and using at least the Seller IDs.

40.     Defendants directly engage in unfair competition with PLAINTIFF by advertising, offering for sale, and selling goods bearing counterfeits and infringements of PLAINTIFF's intellectual property rights to consumers within the United States and this district through E-Commerce using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to PLAINTIFF.

41.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

42.     Upon information and belief, defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to Amazon.com, and Walamart.com where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

43.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

44.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of PLAINTIFF's intellectual property rights unless preliminarily and permanently

enjoined.

45.     Defendants use their E-Commerce-based businesses to infringe the intellectual property rights of PLAINTIFF and others.

46.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of PLAINTIFF's intellectual property rights are essential components of defendants' online activities and are one of the means by which defendants further their counterfeiting and infringement scheme and cause harm to PLAINTIFF.

47.     Defendants use individual seller store names, product denominations and descriptive content containing one or more of the PLAINTIFF, and these names, denominations and content are indexed on search engines and compete directly with PLAINTIFF for space in search results.

48.     The appearance of defendants' individual seller stores through E-Commerce in search engine results undermines PLAINTIFF's efforts to educate consumers about the value of products sold under the PLAINTIFF.

49.     Defendants are using counterfeits and infringements of PLAINTIFF's intellectual property rights to drive Internet consumer traffic to their individual seller stores through E-Commerce operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of PLAINTIFF's legitimate marketplace and intellectual property rights at PLAINTIFF's expense.

50.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with PLAINTIFF's economic interests in the state of Florida and causing PLAINTIFF harm and damage within this jurisdiction.

51.     The natural and intended byproduct of defendants' actions is the erosion and

destruction of the goodwill associated with PLAINTIFFs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

52.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of PLAINTIFF's intellectual property rights, including PLAINTIFF's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

53.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of PLAINTIFF's products in interstate commerce that are counterfeits and infringements of PLAINTIFF's intellectual property rights (the "Counterfeit Goods") through E-commerce operating under the Seller IDs.

54.     Specifically, defendants are using the PLAINTIFF Mark to initially attract online customers and drive them to Defendants' individual seller stores through E-Commerce under the Seller IDs.

55.     Defendants are using identical copies of the PLAINTIFF Mark for different quality goods.

56.     PLAINTIFF has used the PLAINTIFF Mark extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of PLAINTIFF's merchandise.

57.     Upon information and belief, defendants' Counterfeit Goods are of a quality substantially different than that of PLAINTIFF's genuine goods.

58.     Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality and unique water balloons offered for sale by PLAINTIFF, despite Defendants' knowledge that they are without authority to

use the PLAINTIFF Mark.

59.     The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' individual seller stores through E-Commerce are genuine goods originating from, associated with, and approved by PLAINTIFF.

60.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via individual seller stores through E-Commerce operating under, at least, the Seller IDs.

61.     In so advertising their stores and products, Defendants improperly and unlawfully use the PLAINTIFF Mark without PLAINTIFF's permission.

62.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the PLAINTIFF Mark.

63.     Specifically, Defendants are using counterfeits and infringements of the PLAINTIFF Mark in order to make their individual seller stores through Amazon and Walmart selling illegal goods appear more relevant and attractive to consumers searching for both PLAINTIFF's goods and goods sold by PLAINTIFF's competitors online.

64.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for PLAINTIFF's genuine goods through e-commerce.

65.     Defendants are causing individual, concurrent and indivisible harm to PLAINTIFF and the consuming public by (i) depriving PLAINTIFF and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of PLAINTIFF's genuine

goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the PLAINTIFF, and (iii) increasing PLAINTIFF's overall cost to market its goods and educate consumers via the Internet.

66.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

67.     As a result, Defendants are defrauding PLAINTIFF and the consuming public for Defendants' own benefit.

68.     Defendants' use the PLAINTIFF Mark, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without PLAINTIFF's consent or authorization.

69.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to PLAINTIFF's licensed trademarks for the purpose of trading on PLAINTIFF's goodwill and reputation.

70.     If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, PLAINTIFF and the consuming public will continue to be harmed.

71.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

72.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between PLAINTIFF's genuine goods and Defendants' Counterfeit Goods, which there is not.

73.     Defendants' payment and financial accounts, including but not limited to those

specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs through E-Commerce

74.     Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to PLAINTIFF.

75.     PLAINTIFF is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of PLAINTIFF's licensed trademarks.

76.     If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, PLAINTIFF and the consuming public will continue to be harmed.

77.     The harm and damages sustained by PLAINTIFF have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

78.     Defendants have sold their infringing products in competition directly with PLAINTIFF's genuine products.

79.     PLAINTIFF should not have any competition from Defendants because PLAINTIFF never authorized Defendants to use PLAINTIFF's licensed trademarks.

80.     PLAINTIFF has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

81.     PLAINTIFF incorporates the allegations of paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations to the PLAINTIFF Mark in

commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

83.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the PLAINTIFF Mark.

84.     Defendants are continuously infringing and inducing others to infringe the PLAINTIFF Mark by using them to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

85.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

86.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to PLAINTIFF and are unjustly enriching Defendants with profits at PLAINTIFF's expense.

87.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the PLAINTIFF Mark in violation of PLAINTIFF's licensed rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

88.     PLAINTIFF has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

89.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

90.     PLAINTIFF incorporates the allegations of paragraphs 1 through 80 of this Complaint as if fully set forth herein.

91.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of the PLAINTIFF Mark have been widely advertised and offered for sale throughout the United States through E-Commerce.

92.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the PLAINTIFF Mark are virtually identical in appearance to PLAINTIFF's genuine goods.

93.     Defendants' Counterfeit Goods are different in quality from PLAINTIFF's goods, and are of much lower quality.

94.     Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

95.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to PLAINTIFF's detriment.

96.     Defendants have authorized infringing uses of the PLAINTIFF Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

97.     Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

98.     Defendants are using counterfeits and infringements of the in order to unfairly compete with PLAINTIFF and others for space within organic search engine results and social media results, thereby jointly depriving PLAINTIFF of a valuable marketing and educational tool which would otherwise be available to PLAINTIFF and reducing the visibility of PLAINTIFF's genuine goods on the internet and across social media platforms.

99.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

100.     PLAINTIFF has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

101.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and PLAINTIFF will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW UNFAIR COMPETITON

102.     PLAINTIFF incorporates the allegations of paragraphs 1 through 80 of this Complaint as if fully set forth herein.

103.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to one or more of the PLAINTIFF Mark in violation of Florida's common law of unfair competition.

104.     Defendants' activities complained of herein constitute unfair methods of competition.

105.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the PLAINTIFF Mark.

106.     Defendants are also using counterfeits and infringements of the PLAINTIFF Mark to unfairly compete with PLAINTIFF and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

107.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' individual seller stores through E-Commerce and all

15

products sold therein by their use of the PLAINTIFF Mark.

108.    PLAINTIFF has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

109.    PLAINTIFF incorporates the allegations of paragraphs 1 through 121 of this Complaint as if fully set forth herein.

110.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the PLAINTIFF mark.

111.    PLAINTIFF is the owner of all common law rights in and to the PLAINTIFF Mark.

112.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements the PLAINTIFF Mark.

113.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the PLAINTIFF mark.

114.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

WHEREFORE, PLAINTIFF demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.   Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing,

selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the PLAINTIFF Mark; from using the PLAINTIFF Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with PLAINTIFF; from falsely representing themselves as being connected with PLAINTIFF , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with PLAINTIFF; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the PLAINTIFF Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of PLAINTIFF, or in any way endorsed by PLAINTIFF and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of PLAINTIFF's name or trademarks and from otherwise unfairly competing with PLAINTIFF.

b.  Entry of a Temporary Restraining Order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act,

and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the PLAINTIFF Mark.

c.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon PLAINTIFF's request, the governing Amazon.com, Walmart operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing or using counterfeits and infringements of the PLAINTIFF Mark.

d.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon PLAINTIFF's request, any messaging service and Amazon.com and Walmart.com operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon PLAINTIFF's request,

Amazon.com, Walmart operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing or using counterfeits and/or infringements of the PLAINTIFF Marks via the individual seller stores at Amazon.com and Walmart.com operating under the Seller IDs, including but not limited to the listings as outlined on Schedule "A", and upon PLAINTIFF's request, any other listings and images of goods bearing or using counterfeits and/or infringements of the PLAINTIFF Mark associated with any listing to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the PLAINTIFF.

f.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon PLAINTIFF's request, Defendants Amazon.com and Walmart.com operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing or using the PLAINTIFF in its inventory, possession, custody, or control, and surrender those goods to PLAINTIFF.

g.   Entry of an Order requiring Defendants to correct any erroneous

19

impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

h. Entry of an Order requiring Defendants to account to and pay PLAINTIFF for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to PLAINTIFF be trebled, as provided for under 15 U.S.C.§ 1117, or, at PLAINTIFF's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant, including up to the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

i. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of PLAINTIFF's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

j. Entry of an Order that, upon PLAINTIFF's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, Amazon.com, Walmart.com platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as

well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to PLAINTIFF in partial satisfaction of the monetary judgment entered herein.

k.  Entry of an award of pre-judgment interest on the judgment amount.

l.  Entry of an Order for any further relief as the Court may deem just and proper.

Dated: July 12th, 2023                Respectfully submitted,

**LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
Attorneys for Plaintiffs
8950 SW 74 Ct., Suite 1804
Miami, Fl 33156
Telephone: (786) 220-2061
Facsimile: (786) 220-2062
Email: hrubio@rubiolegal.com
Email: frubio@rubiolegal.com
Email: info@rubiolegal.com

By:*/s/ Humberto Rubio*
Humberto Rubio, Jr., Esq.
Florida Bar No. 36433
Felipe Rubio, Esq.
Florida Bar No. 123059