UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 23-cv-22599-RNS

XYZ CORPORATION,

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

Defendants.

_____/

**PLAINTIFF'S, EZSHOOT LLC, SEALED *EX PARTE* MOTION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND ORDER RESTRAINING TRANSFER OF ASSETS**

Plaintiff, EZSHOOT LLC, (hereinafter referred to as "Plaintiff"), by and through

undersigned counsel and pursuant to 15 U.S.C § 1116, Fed. R. Civ. P. 65, and 28 U.S.C §§ 1498

and 1651(a), respectfully moves on an *Ex Parte* basis for entry of temporary restraining order,

including preliminary injunction and an order restraining transfer of assets ("Motion for TRO")

against Defendants, the Individuals, Partnerships, and Unincorporated Associations (collectively,

the "Defendants") identified on Schedule "A", attached hereto. In support thereof, Plaintiff

respectfully submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

## I.      INTRODUCTION

Plaintiff is the owner of all rights in and to the federally registered trademark, "Sexy

Dance" (hereinafter the "Plaintiff's Mark"), which Plaintiff uses for manufacturing, advertising,

marketing, offering for sale and/or soliciting the sale of retail goods and distribution of high-quality

1

clothing. Plaintiff has filed this trademark infringement lawsuit against Defendants, as e-commerce sellers that manufacture, distribute, market, solicit, advertise, offer for sale and/or display content infringing on Plaintiff's registered mark through various e-commerce platforms, including Walmart. *See* Pl.'s Am. Compl., Schedule "A" (ECF No. 9-1). Every time Defendants offer to sell and/or sell a product using Plaintiff's Mark there is a direct loss, for which monetary damages cannot adequately compensate because monetary damages fail to address the loss of control over Plaintiff's intellectual property and goodwill. *See* Declaration of Plaintiff, June 21, 2023 at ¶¶ 8, 19 ("Plaintiff Decl.") (ECF No. 10), attached hereto.

The Lanham Act allows Plaintiff to recover the total illegal profits gained through Defendants' manufacture, offer for sale and/or sales of infringing goods. *See* 15 U.S.C §1117(a). To preserve that disgorgement remedy, Plaintiff seeks an *ex parte* order restraining Defendants' assets including funds specifically transmitted through all possible online marketplace payment providers, including but not limited to Walmart, Paypal, and others (collectively referred to as "financial entities"). Plaintiff seeks this remedy because as a result of Defendants flooding the e-commerce marketplace with unauthorized reproductions and derivatives using Plaintiff's Mark, it is highly probable that Plaintiff will continue to suffer irreparable harm unless Defendants' infringing activity is stopped by this Court. *See* Plaintiff Decl. at ¶¶ 8, 19 (ECF No. 10).

## II.      STATEMENT OF FACTS

### A.      Plaintiff's Mark

Plaintiff is the owner of all rights in and to the federally registered trademark "Sexy Dance", used in connection with the uses for manufacturing, advertising, marketing, offering for sale and/or soliciting the sale of retail goods and distribution of high-quality clothing (hereinafter "Plaintiff's

Mark"). Plaintiff's Mark is registered with the United States Patent and Trademark Office ("USPTO") and is protected from infringement under trademark law and has the following details:

| Trademark | Registration Number | Registration Date | Class/Goods |
|---|---|---|---|
| Sexy Dance | 4,781,913 | July 18, 2015 | Coats; Coats for men and women; Coats made of cotton; Dresses; Football shoes; Leather shoes; Leisure shoes; Men's socks; Mountaineering shoes; Pants; Rompers; Running shoes; Sandals and beach shoes; Shoes; Slippers; Socks; Socks and stockings; Sports bra; Sports pants; Sports shoes; T-shirts; Trousers; Underwear; Women's shoes |

*See* also Pl.'s Am. Compl. at Ex. No. 1 (ECF No. 9-2).

Plaintiff is the owner of all rights, title and interest to Plaintiff's Mark, which has been used in connection with the manufacturing, advertising, offer for sale and/or sale of Plaintiff's clothing. Plaintiff Decl. at ¶ 4 (ECF No. 10). Plaintiff advertises, offers for sale and sells Plaintiff's Mark in authorized e-commerce stores such as Walmart among others. *Id*. (ECF No. 10). Plaintiff has expended time, money and other resources developing, advertising and otherwise promoting Plaintiff's Mark. *Id*. at ¶ 6 (ECF No. 10). Plaintiff suffers irreparable injury any time unauthorized sellers, such as Defendants, promote and otherwise advertise, distribute, sell and/or offer for sale goods bearing and/or using counterfeit and infringing trademark that are exact copy of Plaintiff's Mark. *Id*. at ¶ 8 (ECF No. 10).

Furthermore, Plaintiff has expended a significant amount of resources in connection with trademark enforcement efforts, including legal fees and investigative fees to protect its mark against counterfeit actions. *See* Pl.'s Am. Compl. at at ¶ 22 (ECF No. 9).

3

**B.      Defendants' Trademark Infringement**

Without Plaintiff's permission or license, Defendants are manufacturing, promoting, selling, reproducing, offering for sale, and/or distributing goods using Plaintiff's Mark within this District through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under their seller identification names ("Seller IDs"), as set forth in Schedule A of the Amended Complaint. *See* Pl.'s Am. Compl. at Ex. No. 1 "Schedule A" (ECF No. 9-1); *see also* Plaintiff Decl. at ¶ ¶ 9 (ECF No. 10).

Given Defendants' copying of Plaintiff's Mark, Defendants' Goods offered for sale and sold under identical mark are indistinguishable to consumers, both at the point of sale and post-sale. By using Plaintiff's Mark, Defendants have created a false association between their counterfeit and infringing goods and Plaintiff's Mark. Such false association is in violation of 15 U.S.C § 1125 (a) and is causing and will cause Plaintiff irreparable harm and damage.

As part of its ongoing investigation regarding the sale of infringing products utilizing Plaintiff's Mark, Defendants' Internet based e-commerce stores were accessed under their respective Seller IDs through Walmart and other platforms, as identified on Schedule A. *See* Plaintiff Decl. at ¶ 11 (ECF No. 10). Orders were placed on Walmart.com from each of the Defendant's seller Storefronts set forth in Schedule A of the Amended Complaint of products from each of those Defendants- all directly or indirectly bearing the Sexy Dance trademark at issue in this action. *See* Plaintiff Decl. at ¶ 11 (ECF No. 10). Web page captures and screenshots were taken of the Defendants' infringing products, as they appeared on Defendants' online e-commerce stores, and determined that products are being offered for sale using unauthorized and infringing copies of Plaintiff's Mark and orders were initiated via each Defendants' Seller IDs. *See* Plaintiff Decl. at ¶¶ 10-13 (ECF No. 10); *see also* Declaration of Humberto Rubio, August 15,

2023 at ¶ 5 ("Rubio TRO Decl.") (ECF No. 11), attached hereto and ECF No. 9. In support of this Motion for TRO, Plaintiff has obtained and provided the court with evidence, clearly demonstrating that Defendants are engaged in the advertising, offering for sale, and/or sale of infringing versions of Plaintiff's Mark and that Defendants accomplish their sales of infringing goods via the Internet through their e-commerce stores. *See* Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10 ); see also Rubio TRO Decl. at ¶¶ 5 (ECF No. 11) and Schedule B (ECF No. 11-1).

Plaintiff, who has the ability to identify the distinctions between genuine and counterfeit copies of the same, conducted a review of all of the e-commerce stores operating under the Seller Storefronts, together with all of the items directly or indirectly bearing Plaintiff's Mark offered by sale by Defendants there under, and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10).

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are slightly modified from the registered marks copied are to be considered counterfeit marks. See *Fimab-Finanziaria Maglificio v. Helio Import/Export, Inc.*, 601 F. Supp 1 (S.D. Fla 1983). A comparison of Plaintiff's Mark to the marks and designs used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods. *See* Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10). Defendants' Goods bearing and/or using counterfeits of Plaintiff's Mark are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this  district and throughout the United States. *Id.* at ¶¶ 9-14. Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them.  Defendants obtain their sales proceeds, from

the e-commerce platforms, by using money transfer, and/or retention processing services with PayPal, Inc., and/or having their sales processed using an aggregate escrow account in order to receive monies from the sale of infringing goods. *see* Rubio TRO Decl. at ¶¶ 7-9 (ECF No. 11). The escrow accounts on these e-commerce platforms are held in various financial institutions, including Walmart, Paypal among others. *Id.*

Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Plaintiff. Ultimately, Defendants' Internet activities amount to nothing more than illegal operations infringing on Plaintiff's intellectual property rights. The Seller IDs and associated payments accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

Consequently, Plaintiff is enduring continuous damages at the hands of the Defendants herein, who unlawfully reproduce goods using Plaintiff's Mark to sell for substantial profits. In addition, the goodwill associated with Plaintiff's Mark is being harmed and if Defendants' willful and intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed. *See* Plaintiff Decl. at ¶¶ 19 (ECF No. 10); *see also* Pl.'s Am. Compl. at ¶¶ 21, 65 (ECF No. 9).

## III.   ARGUMENT

Rule 65 of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b). The preceding squarely applies in this case.

Defendants in this case fraudulently promote, advertise, sell, and offer for sale goods bearing and/or using counterfeits and infringements of Plaintiff's Mark via the Seller IDs. By their actions, Defendants, are creating a false association in the minds of consumers between Defendants and Plaintiff. Specifically, Defendants are using counterfeits and infringements of Plaintiff's Mark to increase consumer traffic to their illegal operations. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Plaintiff's Mark and would preserve the status quo until such time as a hearing can be held. See *Dell Inc. v. Belgium Domains, LLC.* Case No. 0722674 2007 WL 6862341 at 2 (S.D. Fla. Nov. 21, 2007)(finding ex parte relief more compelling where defendants' scheme " is in electronic form and subject to quick, easy, untraceable destruction by Defendants.") Absent a temporary restraining order without notice, Defendants can and, based upon counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights. Particularly, the e-commerce store at issue is under Defendants' complete control; thus, Defendants have the ability to change the ownership or modify e-store, private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and transfer asset and ownership of the Seller IDs. *See* Rubio TRO Decl. at ¶¶ 12,13 (ECF No. 11). Such modification can happen in a short span of time after Defendants are provided with notice of this action. Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id.* Absent a temporary restraining order, Defendants could completely erase the status quo. As Defendants engage in illegal trademark counterfeiting and infringing activities, Plaintiff has no reason to believe Defendants will

make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark law.

In addition, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an ex parte basis. *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996)("proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").

###### A.    Temporary Restraining Order and Preliminary Injunction Standard

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at 3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that entry of the relief would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all of the relevant factors as discussed below.

###### B.    Likelihood of Success on the Merits

1)    Likelihood of Success Trademark Infringement

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." Plaintiff must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the marks is without Plaintiffs' authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1). Plaintiff's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Plaintiff's trademark counterfeiting and infringement claims are easily met. Plaintiff's Mark is owned by the Plaintiff and registered on the Principal Register of the United States Patent and Trademark Office, and the trademark has become "incontestable" under 15 U.S.C. §§ 1058 and 1065. See also *Ocean Bio- Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). Moreover, Defendants have never had the right or authority to use Plaintiff's Mark. *See* Plaintiff Decl. at ¶¶ 9, 12 (ECF No. 10).

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See *Safeway Store, Inc. v. Safeway Discount Drugs, Inc.* 675 F.2d 1160, 1164

(11th Cir. 1982); see also *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.).

(i) *Strength of the Marks.*

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362 (11th Cir. 1997). The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. *Id.* It cannot be seriously disputed that the Plaintiff's Mark is a strong, arbitrary and fanciful mark. *See* Plaintiff Decl. at ¶¶ 4-8 (ECF No. 10).

Plaintiffs' Marks have also acquired secondary meaning. Plaintiffs have expended substantial time, labor, skill, and expense in developing, advertising, and promoting Plaintiff's Mark. *Id.* at ¶¶ 6, 16. Plaintiff's Mark enjoys widespread recognition and are prominent in the minds of its consumers.

(ii) *Similarity of the Marks.*

Likelihood of confusion is greater when an infringer uses the exact trademark. *Turner Greenberg Assocs. v. C & C Imps.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are using marks which are identical to Plaintiff's Mark with Defendants' Websites Stores as showed in Schedule B (ECF No. 11-1).

(iii) *Similarity of the Goods.*

10

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland  Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Plaintiff sells. *See* Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10). Because they bear counterfeits of Plaintiff;s Mark, Defendants' Goods appear virtually identical to Plaintiff's genuine products in the consumer market. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See *John H. Harland Co. v. Clarke Checks, Inc.*,711 F.2d 966, 976 (11th Cir. 1983).

(iv) and (v) *Similarity of Sales Method and Advertising Method.*

Convergent marketing channels increase the likelihood of confusion. See *Turner Greenburg Assocs.*, 320 F. Supp. 2d at 1332. Both Plaintiff and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical areas within the United States, including the Southern District of Florida. *See* Plaintiff Decl. at ¶¶ 4-6 (ECF No. 10) and Am. Compl. (ECF No. 9). Moreover, both target the same general customers, and as such, Plaintiff is directly competing with Defendants' products.

(vi) *Defendants' Intent.*

In this District, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333, citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp.2d 1261, 1268 (S.D. Fla. 1999). In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Plaintiff's reputation, to Plaintiff's detriment. See *Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

(vii) *Evidence of Actual Confusion.*

11

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion. *See Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit products identical in appearance to those sold by Plaintiff. Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10). Even if buyers are told of the copycat nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will be confused because they are viewing goods bearing Plaintiff's Mark which undeniably creates the impression they are viewing genuine goods sold or authorized by Plaintiff. Such post-sale confusion is actionable. *See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc.*, 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.")

The above factors weight only in favor of Plaintiff, thereby establishing strong likelihood of success on the merits of the case.

2)      Likelihood of Success on False Designation of Origin Claim.

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical - is there a "likelihood of confusion?" *Id.* Therefore, because Plaintiff has established the merits of its trademark counterfeiting and infringement claim against Defendants, a likelihood of success is also shown as to Plaintiff's second claim for false designation of origin.

3)      Likelihood of Success on Common Law Unfair Competition Claim.

Whether a defendant's use of the plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *Rolex Watch U.S.A., Inc. v. Forrester*, No.83–8381–Civ-Paine, 1986 WL 15668, at 3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)").  Plaintiff has established there is a likelihood of confusion regarding Defendants' use of Plaintiff's Mark on their counterfeit and infringing products. Accordingly, Plaintiff is also likely to succeed on the merits of its common law unfair competition claim.

**C.      Plaintiff is Suffering Irreparable Injury**

This Circuit has expressed the following: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas  Ptnrs., L.P. v. Barrow*, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where Plaintiffs have demonstrated they will lose control of their respective reputations as a result of Defendants' activities. *Id*. A likelihood of confusion exists here because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from Plaintiff's Mark.

Every time Defendants offer to sell and/or sell a product using Plaintiff's Mark there is a direct loss for which monetary damages cannot adequately compensate for because they fail to

13

address the loss of control over Plaintiff's intellectual property and goodwill. Plaintiff Decl. at ¶ 19 (ECF No. 10).

"[L]oss in market share" can itself constitute irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1151 (Fed. Cir. 2001). A court "commit[s] a clear error of judgment" when it fails to find irreparable harm in the face of "evidence of . . . the parties' direct competition" and "loss in market share and access to potential customers resulting from [the defendant's] introduction of infringing" products. *Id.*; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d. Cir. 2002) ("In a competitive industry where consumers are brand-loyal, we believe that loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") (internal quotation marks and citations omitted).

### D.    The Balance of Hardship Tips Sharply in Plaintiff's Favor

Plaintiff has spent substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with Plaintiff's Mark. Plaintiff Decl. at ¶ 6 (ECF No. 10). Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will continue to suffer substantial losses and damage to its respective reputations. Plaintiff Decl. at ¶¶ 15-19 (ECF No. 10). However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

Because Defendants are engaged in infringement activities, the only hardship they will suffer as a result of an injunction is court-ordered compliance with intellectual property laws. *Adobe Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996).  In other cases, the Courts have ruled that the evidence of irreparable harm to plaintiff far outweighs the harm that a

preliminary injunction may cause Defendant. *CB Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (holding a company cannot build a business on infringements and then argue that enforcing the law will cripple that business) *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333 (S.D. Fla.1998)).

Allowing infringement during the pendency of this lawsuit effectively grants the infringer a license for the pendency of this litigation and encourages others to infringe as well. *Hybritech*, 849 F.2d at 1456 (affirming finding of irreparable harm where, inter alia, absent injunction "other potential infringers will be encouraged to infringe"). Irreparable harm results when other infringement is encouraged because of the absence of an injunction. *Id*.

In contrast, the entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from the wrongful sale of goods using Plaintiff's Mark and preserve the status quo until such time as a hearing can be held. *See Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

E.    **The Relief Sought Serves the Public Interest**

The public interest clearly favors maintaining the integrity of the intellectual property laws. *Belushi*, 598 F. Supp. at 37.; *see also C.B. Fleet Co.* 510 F. Supp. at 1084 (S.D. Fla. 2007) (The public interest can only be served by upholding intellectual property protection and preventing the misappropriation of protected works.)

Defendants are engaged in unlawful activities and are directly defrauding the consuming public by palming off Defendants' Goods as Plaintiff's genuine goods. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques*

15

*Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla.1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

**IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

> **A.     *Ex Parte* Temporary Restraining Order is Appropriate**

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

A court may only issue a temporary restraining order without notice to the adverse party or its attorney if: (a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65 (b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brh. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.,* 415 U.S. 423, 439 (1974).

Defendants, through their e-commerce stores, promote, advertise, offer for sale and/or sell products that infringe on Plaintiff's Mark. *See* Plaintiff Decl. at ¶¶ 9-14 (ECF No. 10). The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their unauthorized use of Plaintiff's Mark and preserve the status quo until such time as a hearing can be held. *Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674, 2007 WL 6862341 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in

electronic form and subject to quick, easy, untraceable destruction by Defendants.").

Absent a temporary restraining order, without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights. Rubio TRO Decl. at ¶13 (ECF No. 11).   Significantly, because Defendants have complete control of their e-commerce stores, at issue and if notice of this action is given Defendants can easily modify the ownership of the e-commerce store, data, content, payment accounts, redirect consumers to other seller identification names, and transfer assets to other seller identification numbers. No notice has been provided to Defendant. Rubio TRO Decl. at ¶¶12-14 (ECF No. 11).

As a result, this Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from displaying their infringing goods via their e-commerce stores and websites or modifying or deleting any related content or data. Only such an order will prevent ongoing irreparable harm to Plaintiff and maintain the status quo.

    **B.**    **Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of This Action Is Appropriate**

Plaintiff seeks an order temporarily prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties in order to preserve the status quo.  Once they become aware of this lawsuit, Defendants can easily, and often will, change the ownership or modify their e-commerce store account, data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby frustrate the Court's ability to grant meaningful relief. *See* Rubio TRO Decl. at ¶¶ 12-13 (ECF No. 11).  As a result, Plaintiff seeks a temporary order prohibiting Defendants from transferring their e-commerce stores and domain names operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court,

after fully hearing the merits of this action, will be able to afford Plaintiff meaningful relief in accordance with the Lanham Act.

**C.    An *Ex Parte* Order Restraining Transfer of Assets Is Appropriate**

In furtherance of an order temporarily restraining Defendants' offer for sale and/or sale of good bearing Plaintiff' Mark, Plaintiff requests this Court also enter an Order limiting the transfer of Defendants' unlawfully gained assets.  Plaintiff has demonstrated above that it will likely succeed on the merits of its claims.  As such, under 15 U.S.C. § 1117, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme.

Defendants, through their e-commerce stores, have deliberately infringed on the protections afforded to Plaintiff by federal trademark laws.  Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by financial institutions for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto.  *SEC v. ETS Payphones*, 408 F. 3d 727, 734 (11th Cir. 2005) (finding it proper to enjoin all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).  *See also,  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996) and *Reebok Int'l Ltd.*, 970 F.2d 552, 563 (9th Cir. 1992)(the Lanham Act authorizes the District Court to grant Reebok an  accounting  of [Defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [Defendant's] assets in order to ensure the availability of that final relief).

Many circuit courts, including the Eleventh Circuit, have upheld the court's authority to restrain assets*. Levi Strauss & Co.* 51 f. 3d at 987-988 (upholding the asset freeze in the case

because it allowed appellants to petition the district court to modify the freeze).  In *Levi Strauss*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under *Id.* at 987. This Court has held that it may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1364 (S.D. Fla. 2006) (upholding temporary freeze of all of defendant's assets in order to maintain the status quo).

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets.  Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has an additional cause for *ex parte* relief, as Defendants may easily transfer their assets without the Court's or Plaintiff's knowledge.

## V.    A Bond Should Secure the Injunction

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65 (c).  The amount of the bond is left to the discretion of the court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.,* 112 F. 3d 1125, 1127 (11th Cir. 1997). In light of Plaintiff's evidence of infringement, Plaintiff respectfully requests this Court require it to post a bond of no more than Ten Thousand Dollars ($10,000.00).

## VI.    CONCLUSION

Plaintiff is enduring continuous damages to its intellectual property rights at the hands of the Defendants in this matter, who unlawfully reproduce goods using Plaintiff's Mark to sell for

substantial profits.  Defendants are damaging the goodwill associated with Plaintiff's and harming,

tricking and confusing the public.  As a result, Plaintiff respectfully seeks the granting, under seal,

of this Motion for TRO and enter the Order as to Defendants in the form submitted herewith.

Respectfully submitted on this 16th day of August, 2023.

                                  **LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
                                  Attorneys for Plaintiff
                                  8950 SW 74 Ct., Suite 1804
                                  Miami, Fl 33156
                                  Telephone: (786) 220-2061
                                  Facsimile: (786) 220-2062
                                  Email: hrubio@rubiolegal.com
                                  Email: frubio@rubiolegal.com
                                  Email: info@rubiolegal.com

                                  By:*/s/ Humberto Rubio*
                                  Humberto Rubio, Jr., Esq.
                                  Florida Bar No. 36433
                                  Felipe Rubio, Esq.
                                  Florida Bar No. 123059