United States District Court
for the
Southern District of Florida

| | |
|---|---|
| XYZ Corporation, Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 23-22599-Civ-Scola |
| The Individuals, Partnerships, and ) | |
| Unincorporated Associated ) | |
| Identified on Schedule "A", ) | |
| Defendants. ) | |

**<u>Order Granting in Part Ex Parte Motion for Temporary Restraining Order</u>**

This matter is before the Court on the Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 12). The Plaintiff, EZSHOOT LLC, moves, ex parte, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Amended Complaint (collectively "the Defendants"), and an order restraining the financial accounts used by the Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651(a).[1]

The Court has carefully considered the Motion, the record, and the governing law. For the reasons stated below, the Court **grants in part** the Plaintiff's Ex Parte Application for Temporary Restraining Order. (**ECF No. 12**.)

1. **Background**

On July 12, 2023, the Plaintiff filed the present action for trademark infringement alleging that the Defendants, through e-commerce stores, advertise, promote, market, offer for sale, display and solicit for sale, using Plaintiff's federally registered trademark in violation of federal trademark law. (ECF No. 1, 9).

Plaintiff is the owner of all rights in and to the federally registered trademark "Sexy Dance," used in connection with the uses for manufacturing, advertising, marketing, offering for sale, and/or soliciting the sale of retail goods and distribution of high-quality clothing (hereinafter "the Plaintiff's Mark"). The Plaintiff's Mark is registered with the United States Patent and

---

[1] The Court previously granted the Plaintiff's Motion to Proceed under Pseudonym and to File Under Seal (ECF No. 7), but the Court now references the Plaintiff's name because at the time this Order is unsealed, the Plaintiff will be required to proceed under its true name.

Trademark Office and is protected from infringement under trademark law and has the following details:

| Trademark | Registration Number | Registration Date | Class/Goods |
|---|---|---|---|
| Sexy Dance | 4,781,913 | July 18, 2015 | Coats; Coats for men and women; Coats made of cotton; Dresses; Football shoes; Leather shoes; Leisure shoes; Men's socks; Mountaineering shoes; Pants; Rompers; Running shoes; Sandals and beach shoes; Shoes; Slippers; Socks; Socks and stockings; Sports bra; Sports pants; Sports shoes; T-shirts; Trousers; Underwear; Women's shoes |

Pl.'s Am. Compl., Ex. 1 (ECF No. 9-2).

The Plaintiff is the owner of all rights, title, and interest to the Plaintiff's Mark, used in connection with the manufacturing, advertising, offer for sale, and/or sale of the Plaintiff's clothing. Pl.'s Decl. ¶ 4 (ECF No. 10). The Plaintiff advertises, offers for sale, and sells goods using the Plaintiff's Mark in authorized e-commerce stores such as Walmart. *Id.* The Plaintiff has expended time, money, and other resources developing, advertising, and promoting the Plaintiff's Mark. *Id.* at ¶ 6. The Plaintiff suffers irreparable injury any time unauthorized sellers, such as the Defendants, promote and otherwise advertise, distribute, sell, and/or offer for sale goods bearing and/or using counterfeit and infringing trademarks that are exact copies of the Plaintiff's Mark. *Id.* at ¶ 8.

Furthermore, the Plaintiff has expended resources to enforce its ownership of the Mark, including legal and investigative fees to protect against infringement. *See* Pl.'s Am. Compl. ¶ 22 (ECF No. 9).

Without the Plaintiff's permission or license, the Defendants are manufacturing, promoting, selling, reproducing, offering for sale, and/or distributing goods using the Plaintiff's Mark within this District through

various internet-based e-commerce stores and websites operating under their seller identification names ("Seller IDs"), as set forth in Schedule "A" of the Amended Complaint. *See* Pl.'s Am. Compl., Ex. 1 (ECF No. 9-1); *see also* Pl.'s Decl. ¶ 9 (ECF No. 10).

Given the Defendants' copying of the Plaintiff's Mark, the Defendants' goods offered for sale and sold under an identical mark are indistinguishable to consumers, both at the point of sale and post-sale. By using the Plaintiff's Mark, Defendants have created a false association between their goods and the Plaintiff's Mark.

The Plaintiff has accessed the Defendants' internet-based e-commerce through Walmart and other platforms, as identified on Schedule "A," and placed orders of goods listed under the "Sexy Dance" brand from each Defendant. *See* Pl.'s Decl. ¶ 11 (ECF No. 10). The Plaintiff has submitted web page captures and screenshots of the Defendants' products, as they appeared on Defendants' e-commerce stores. *See id.* ¶¶ 10-13; *see also* Decl. of Humberto Rubio ¶ 5 ("Rubio TRO Decl.") (ECF No. 11). In support of its Motion for TRO, the Plaintiff has obtained and provided the court with evidence sufficient to demonstrate the Defendants' engagement in the advertising, offering for sale, and/or sale of goods using the Plaintiff's Mark and that the Defendants accomplish their sales of infringing goods through their e-commerce stores. *See* Pl's Decl. ¶¶ 9-14 (ECF No. 10 ); *see also* Rubio TRO Decl. ¶ 5 (ECF No. 11); Schedule B (ECF No. 11-1).

The Plaintiff conducted a review of all of the e-commerce stores operating under the Seller Storefronts, together with all of the items directly or indirectly bearing the Plaintiff's Mark offered for sale by the Defendants thereunder, and determined the products were non-genuine, unauthorized versions of the Plaintiff's goods. *See* Pl.'s Decl. ¶¶ 9-14 (ECF No. 10).

### 2. Legal Standard

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at 3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000), aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that entry of the relief would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co.*

*v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### 3. Analysis

The Plaintiff brings suit against 83 e-commerce sellers, alleging federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. In support, the Plaintiff provided the Court with over 600 pages of screenshots from the Defendants' various e-commerce websites (ECF No. 11-1). The Plaintiff left it to the Court to identify where each Defendant allegedly infringed on the Plaintiff's trademark. While the Court underwent this exercise, it kept a few legal principles in mind.

To succeed on a claim of trademark infringement, a plaintiff must establish (1) ownership of the trademarks at issue; (2) that the defendants' use of the marks is without the plaintiffs' authorization; and (3) the defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of the defendants' goods. *See* 15 U.S.C. § 1114(1).

After careful review of the record and the applicable legal authorities, the Court finds that the Plaintiff has not established a substantial likelihood of success on the merits for his claim of trademark infringement against the following Defendants: Wonderful Life Co. Ltd and MissiMae.

As to these Defendants, the Plaintiff did not provide evidence establishing a substantial likelihood of success on the merits. From a review of the exhibits submitted, while these Defendants appear to sell clothing, the Plaintiff has not established a substantial likelihood that these Defendants unlawfully infringed

upon the Sexy Dance Mark. There is no indication that these two Defendants have used the Mark in advertising and selling their clothing.

As to the remaining Defendants (the "TRO Defendants"), the Court finds that the Plaintiff has established a substantial likelihood of success on the merits. First, the Court finds that the Plaintiff established a substantial likelihood of success in proving that the Plaintiff owns a valid trademark in the Sexy Dance Mark. Moreover, the Plaintiff established a substantial likelihood of success in showing that the TRO Defendants used the Sexy Dance Mark without authorization in furtherance of their e-commerce businesses. Finally, the Defendants' use is likely to cause confusion, mistake, or deception as to the source of the goods sold because of the use of the exact text of the Plaintiff's trademark.

The Plaintiff's declarations (Declaration of Plaintiff and Declaration of Humberto Rubio, ECF Nos. 12-2, 12-3) in support of the Ex Parte Motion for Temporary Restraining Order support the following conclusions of law with regards to the TRO Defendants:

    A.    The Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Plaintiff's Mark, and that the products the Defendants are selling and promoting for sale are copies of the Plaintiff's products that bear and/or use copies of the Plaintiff's Mark.

    B.    Because of the infringement of the Plaintiff's Mark, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Amended Complaint, Motion for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for ex parte relief is granted:

        1.    The Defendants own or control internet-based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing infringing images/products in violation of the Plaintiff's rights;

        2.    There is good cause to believe that more infringing products bearing reproductions and derivatives of the Plaintiff's Mark will appear in the marketplace, and that consumers are likely to be misled, confused, and disappointed by the quality of these products; and

3. There is good cause to believe that if the Plaintiff proceeds on notice to the Defendants of this Motion for Temporary Restraining Order, the Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs, thereby thwarting the Plaintiff's ability to obtain meaningful relief.

C. The balance of potential harm to the Defendants in restraining their trade in infringing goods if a temporary restraining order is issued is far outweighed by the potential harm to the Plaintiff, and its reputation and goodwill as the owner of its trademark.

D. The public interest favors issuance of the temporary restraining order to protect the Plaintiff's interests in its trademark, to encourage respect for the law, and to protect the public from being defrauded by the illegal sale of counterfeit products and infringing goods.

E. Under 15 U.S.C. § 1117(a), a plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the plaintiff's mark. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under [§] 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962)).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the infringing business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of the Plaintiff's Amended Complaint, Motion for Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby **ORDERS and ADJUDGES** that the Plaintiff's Ex Parte Motion for Temporary

Restraining Order (ECF No. 12) is **granted in part**, under the terms set forth below:

(1) Each of the TRO Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

> a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Plaintiff's Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff; and
>
> b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Plaintiff's Mark, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Plaintiff's Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any TRO Defendant, including, but not limited to, any assets held by or on behalf of any TRO Defendant.

(2) Each of the TRO Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the TRO Defendants having notice of this Order shall immediately discontinue the use of any unauthorized copies of the Plaintiff's Mark, or any confusingly similar trademarks, on or in connection with all internet-based e-commerce stores owned and operated, or controlled by them, including the internet-based e-commerce stores operating under the Seller IDs.

(3) Each of the TRO Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4) Upon receipt of notice of this Order, the TRO Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the TRO Defendants, including but not limited to, Walmart and Paypal, and/or their related companies and affiliates (collectively, the "Third-Party

Providers"), shall within five (5) business days after receipt of notice of this Order,

    a.    Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the TRO Defendants' benefit or to be transferred into the TRO Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

    b.    Provide the Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) the identity and location of the TRO Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

    (5)    Any TRO Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

    (6)    In addition to other methods authorized by law, the Plaintiff may provide notice of these proceedings to third parties by delivery of this Order and other relevant documents to the following Online Marketplace platforms, Financial Institutions and/or Third-Party Service Providers at the following addresses:

i. Walmart, legal@walmart.com; TROLegalComms@walmartlegal.com

ii. PayPal, attention EE Omaha Legal Specialist at EEOMALegalSpecialist@paypal.com;

iii. Payoneer, VP of Operations at VPOperations@Payoneer.com and/or Melissa Godwin, Legal Counsel, at melissa.godwin@us.dlapiper.com;

(7) The Clerk of the Court is directed to issue a single original summons in the name of "Howden Fashion Co.Ltd and all other TRO Defendants identified in Schedule 'A' of the Amended Complaint" that shall apply to the TRO Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that the TRO Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise the TRO Defendants of the pendency of the action and afford them the opportunity to present their objections.

(8) This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by the TRO Defendants for the purpose of infringing the Plaintiff's trademark at issue in this action and/or unfairly competing with the Plaintiff.

(9) This Order shall go into effect immediately and remain in full force for two weeks from the date of entry of this Order and expires on **August 31, 2023**, or until further order of the Court.

(10) Pursuant to Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(11) After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiff shall serve copies of the Amended Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, the Plaintiff shall post copies of the Amended Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at https://tinyurl.com/22599TM and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given

shall be deemed good and sufficient service thereof. The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at https://tinyurl.com/22599TM or by other means reasonably calculated to give notice which is permitted by the Court.

(12) A hearing is set before this Court on **August 29, 2023** at **8:30 AM** at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction. The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116; Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

(13) Any response or opposition to the Plaintiff's Motion for TRO must be filed and served on the Plaintiff's counsel and field with the Court by **August 25, 2023**.

(14) Once the Plaintiff serves the Defendants via the methods set out above, the Plaintiff, within five days of service, must file a motion to unseal or otherwise explain why any materials should remain under seal.

**Done and ordered** in Miami, Florida, on August 17, 2023.

_____
Robert N. Scola, Jr.
United States District Judge