United States District Court
for the
Southern District of Florida

| | |
|---|---|
| XYZ Corporation, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 23-22599-Civ-Scola |
| The Individuals, Partnerships, and | ) |
| Unincorporated Associated | ) |
| Identified on Schedule "A," | ) |
| Defendants. | ) |

## Order Granting Motion for Preliminary Injunction

This matter comes before the Court on the Plaintiff's ex parte Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 12) and upon the hearing held on September 6, 2023. The Plaintiff, EZSHOOT LLC, moves, ex parte, for entry of a temporary restraining order against the remaining Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Amended Complaint (collectively "the Defendants"), and an order restraining the financial accounts used by the Defendants pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65. The Court has carefully considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

The Court convened a hearing on **September 6, 2023**, at which only counsel for the Plaintiff was present and available to present evidence supporting the Motion. The Defendants have not formally responded to the Motion, nor made any filings in this case, or appeared in this matter either individually or through counsel. Because the Plaintiff has satisfied the requirements for the issuance of a preliminary injunction, the Court **grants** the Motion for a preliminary injunction. (**Pl.'s Mot., ECF No. 12.**)

1. **Background**

On July 12, 2023, the Plaintiff filed the present action for trademark infringement alleging that the Defendants, through e-commerce stores, advertise, promote, market, offer for sale, display and solicit for sale, using Plaintiff's federally registered trademark in violation of federal trademark law. (ECF Nos. 1, 9).

Plaintiff is the owner of all rights in and to the federally registered trademark "Sexy Dance," used in connection with the uses for manufacturing,

advertising, marketing, offering for sale, and/or soliciting the sale of retail goods and distribution of high-quality clothing (hereinafter "the Plaintiff's Mark"). The Plaintiff's Mark is registered with the United States Patent and Trademark Office and is protected from infringement under trademark law and has the following details:

| Trademark | Registration Number | Registration Date | Class/Goods |
|---|---|---|---|
| Sexy Dance | 4,781,913 | July 18, 2015 | Coats; Coats for men and women; Coats made of cotton; Dresses; Football shoes; Leather shoes; Leisure shoes; Men's socks; Mountaineering shoes; Pants; Rompers; Running shoes; Sandals and beach shoes; Shoes; Slippers; Socks; Socks and stockings; Sports bra; Sports pants; Sports shoes; T-shirts; Trousers; Underwear; Women's shoes |

Pl.'s Am. Compl., Ex. 1 (ECF No. 9-2).

The Plaintiff is the owner of all rights, title, and interest to the Plaintiff's Mark, used in connection with the manufacturing, advertising, offer for sale, and/or sale of the Plaintiff's clothing. Pl.'s Decl. ¶ 4 (ECF No. 10). The Plaintiff advertises, offers for sale, and sells goods using the Plaintiff's Mark in authorized e-commerce stores such as Walmart. *Id.* The Plaintiff has expended time, money, and other resources developing, advertising, and promoting the Plaintiff's Mark. *Id.* at ¶ 6. The Plaintiff suffers irreparable injury any time unauthorized sellers, such as the Defendants, promote and otherwise advertise, distribute, sell, and/or offer for sale goods bearing and/or using counterfeit and infringing trademarks that are exact copies of the Plaintiff's Mark. *Id.* at ¶ 8.

Furthermore, the Plaintiff has expended resources to enforce its ownership of the Mark, including legal and investigative fees to protect against infringement. *See* Pl.'s Am. Compl. ¶ 22 (ECF No. 9).

Without the Plaintiff's permission or license, the Defendants are manufacturing, promoting, selling, reproducing, offering for sale, and/or distributing goods using the Plaintiff's Mark within this District through various internet-based e-commerce stores and websites operating under their seller identification names ("Seller IDs"), as set forth in Schedule "A" of the Amended Complaint. *See* Pl.'s Am. Compl., Ex. 1 (ECF No. 9-1); *see also* Pl.'s Decl. ¶ 9 (ECF No. 10).

Given the Defendants' copying of the Plaintiff's Mark, the Defendants' goods offered for sale and sold under an identical mark are indistinguishable to consumers, both at the point of sale and post-sale. By using the Plaintiff's Mark, Defendants have created a false association between their goods and the Plaintiff's Mark.

The Plaintiff has accessed the Defendants' internet-based e-commerce through Walmart and other platforms, as identified on Schedule "A," and placed orders of goods listed under the "Sexy Dance" brand from each Defendant. *See* Pl.'s Decl. ¶ 11 (ECF No. 10). The Plaintiff has submitted web page captures and screenshots of the Defendants' products, as they appeared on Defendants' e-commerce stores. *See id.* ¶¶ 10-13; *see also* Decl. of Humberto Rubio ¶ 5 ("Rubio TRO Decl.") (ECF No. 11). In support of its Motion for TRO, the Plaintiff has obtained and provided the court with evidence sufficient to demonstrate the Defendants' engagement in the advertising, offering for sale, and/or sale of goods using the Plaintiff's Mark and that the Defendants accomplish their sales of infringing goods through their e-commerce stores. *See* Pl's Decl. ¶¶ 9-14 (ECF No. 10 ); *see also* Rubio TRO Decl. ¶ 5 (ECF No. 11); Schedule B (ECF No. 11-1).

The Plaintiff conducted a review of all of the e-commerce stores operating under the Seller Storefronts, together with all of the items directly or indirectly bearing the Plaintiff's Mark offered for sale by the Defendants thereunder, and determined the products were non-genuine, unauthorized versions of the Plaintiff's goods. *See* Pl.'s Decl. ¶¶ 9-14 (ECF No. 10).

### 2. Legal Standard

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *see also Levi Strauss & Co.*

*v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### 3. Analysis

Based on the declarations submitted in support of the Plaintiff's Motion, as well as the evidence presented at the preliminary injunction hearing, the Court concludes that the Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, reproductions, or colorable imitations of the Sexy Dance Mark, that the products the Defendants are selling and promoting for sale bear or use copies of the Plaintiff's intellectual property, and that the infringement of the trademarks and copyrights will likely cause the Plaintiff to suffer immediate and irreparable injury if a preliminary injunction is not granted.

Specifically, the Court concludes that:

A.   The Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Sexy Dance Mark.

B.   Because of the infringement of the Mark, the Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Motion, and accompanying declarations, as well as the evidence presented at the preliminary injunction hearing, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers because it is more likely true than not that:

   1.   The Defendants own or control e-commerce stores via Internet marketplace platforms operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing or using an infringing trademark in violation of the Plaintiff's rights; and

   2.   There is good cause to believe that more infringing products bearing the Plaintiff's trademark will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

C.   The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to the Plaintiff, its

reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D. The public interest favors issuance of a preliminary injunction to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E. Further, under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing infringing on the Sexy Dance Mark.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

In light of the inherently deceptive nature of the infringing business, and the likelihood that the Defendants have violated federal trademark law, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

### 4. Conclusion

Accordingly, upon review of the Plaintiff's Complaint, Motion, and supporting evidentiary submissions, the Court hereby **orders and adjudges** that the Plaintiff's Motion for a preliminary injunction (**ECF No. 12**) is **granted**, under the terms set forth below:

### A. Preliminary Injunction

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are hereby restrained and enjoined, until further order of this Court, as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Sexy Dance Mark, or any confusingly similar

trademarks, other than those actually manufactured or distributed by the Plaintiff;

b.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Sexy Dance Mark, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Sexy Dance Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

(2)     Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall, to the extent not already done, immediately discontinue the unauthorized use of the Sexy Dance Mark and confusingly similar trademarks on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3)     Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4)     Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to Walmart, Paypal, and their related companies and affiliates (collectively, the "Third Party Providers"), shall, to the extent not already done, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, and restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.  No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant

to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(5) Continue to provide the Plaintiff information regarding the (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A," as well as any other accounts of the same customer(s); (ii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

(6) Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(7) This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of infringing the Sexy Dance Mark at issue in this action and/or unfairly competing with Plaintiff.

(8) As a matter of law, this Order shall no longer apply to any of the Defendants or associated Seller IDs, ecommerce stores, or websites, dismissed from this action or as to which the Plaintiff has withdrawn its request for a preliminary injunction.

(9) This Order is subject to the jurisdictional constraints of the Lanham Act. *See Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952); *Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278-79 (11th Cir. 2001).

(10) This Order shall remain in effect during the pendency of this action, or until further order of this Court.

### B. Bond

(11) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall maintain its previously posted bond in the amount of **Ten Thousand Dollars and Zero Cents ($10,000.00)**, as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

**Done and ordered** at Miami, Florida on September 6, 2023.

_____
Robert N. Scola, Jr.
United States District Judge